Mr. Chief Justice Johnson delivered the opinion of the court. The question to be decided is whether the court below erred or not in arresting the judgment and dismissing the case from the court by striking it from the docket. In order to determine this question properly it will become necessary to ascertain who is the real party defendant in suits under the statute, or, in other words, who are the actual bona fide contracting parties ; and also, to see what is the character and extent of the demand to be enforced, as well as the defence that can be interposed. These several questions can be determined alone by reference to our general statute of attachments, taken in connection with the one under which this suit was brought. The first section of the latter, that is to say, the one creating a lien upon boats, vessels &c., wc think will admit of but one construction; and we think it equally clear that all those which follow it, are susceptible of such a construction as to be made fully to harmonize with it. This section provides that, “ Boats and vessels of all descriptions,, built, repaired,’ or equipped, or running upon any of the navigable waters of this State, shall be liable for all debts contracted by the owners, masters, supercargoes or assignees thereof, on accouut of all work done, or supplies or materials furnished by mechanics, tradesmen and others, for, on account of, or towards the building, repairing, fitting, furnishing or equipping such boats or vessels, their engines, machinery, sails, rigging, tackle, apparel and furniture, and such debts shall have the preference of all other debts due from the owners or proprietors, except wages of mariners, boatmen and others employed in the service of boats and vessels, which shall be first paid.” It must be quite obvious to every one that no possible inference can be drawn from this section, in support of the notion that the boat itself was designed to be endowed with the capacity to contract debts in her own name. The act declares that the boat shall be liable for debts, not contracted by itself, but for such as shall be contracted by the owners, masters, supercargoes or assignees thereof. The second, also carrying out the same idea, provides that “ Any person having a demand contracted as above mentioned, upon filing an affidavit &c., may have an attachment” &c. The affidavit here given must of necessity correspond strictly and set out the demand in accordance with the first section. But it is insisted that by the fourth the plaintiff is given his election to proceed either against the owner or owners by their proper names, or by the name and style of their partnership, if known, or against the boat or vessel by her name or description only. We cannot discover here the most remote recognition of the power in the boat to make a contract in her own name and under her proper signature, but so far as is perceived, the only privilege that is conferred by it is that after having made and filed his affidavit, as previously indicated, setting out a contract made by one of the descriptions of persons mentioned in the first section, he may then, if he shall so choose, run his writ directly against the boat and not against the party charged to have made the contract as required by the general statute of attachments. This has reference alone to the command of the writ, which, instead of requiring the officer, who has charge of it, to attach the defendant therein named by all and singular his property as in ordinary suits of attachments, authorizes and requires him to seize the boat itself and to detain the same. If any doubt could otherwise exist as to the true construction and interpretation of the act in respect to this question, we think it would certainly yield before the plain and positive language ofthe ninth section. This is the one that prescribes the form of the declaration, and from its requisitions it is perfectly apparent that the boat is not endowed with the high personal attributes claimed for it by the plaintiffs. It is that “ upon the return of such attachment the plaintiff shall file a written declaration or statement against such boat or vessel, by her name or description, or against the owner or owners, as the case may be, briefly reciting the nature of the demand, whether for work and labor done, or materials, firewood, or supplies of provisions furnished, or whether at the request of the owner, master, supercargo or consignee of such boat or vessel” &c. It will be observed that the declaration is required to state the party at whose request the demand was made against the boat, and also that it is confined strictly to the identical description of persons as that mentioned in the first section, and upon whom alone it conferred authority to create a lien upon the boat. We consider it clear from the whole tenor ofthe act that it was no part of its design to invest the boat with the capacity of making contracts ; and that the plain and obvious reasons tor permitting the plaintiff to pass by the defendant in the execution ofthe writ and to seize directly upon the boat, were first, the great necessity, in some instances, of securing the boat immediately or incurring the risk of loosing the debt; and secondly, to obviate the diffiulty which would often arise either from the absence of the owners or the utter impossibility to ascertain their names. It is sufficient for the affidavit and also for the declaration, that the contract sued upon be described as having been made by the owner, master, supercargo or consignee of the boat, whereas, in the very nature of things, such general description would not be sufficient in the writ as it would not inform the officer with legal certainty upon whom to execute it. It is clear, therefore, that when the object is to enforce the lien upon the boat, the owners are the only persons recognized by the act as the real defendants, and although other persons are authorized to make contracts which may operate as liens, yet it is by virtue of their supposed agency arising from the fact of their being entrusted with the control and management of the boat at the time of the making of the contract. There is nothing in conflict with this doctrine in the cases referred to by the counsel for the plaintiffs, except in the case of The Steamboat Time vs. Parmlee, (10 Missouri 580.) The court there said : “Our law, as it were, personifies a steamboat. For particular purposes and under particular circumstances, it gives it the capacity to contract debts, and subjects it, as a person, to suits for the recovery of those debts.” If that court actually means that the law conferred upon the boat the capacity to contract as a living and independent party, we cannot yield our concurrence. We have been induced, from the doctrine thus announced, to look to the Missouri statute, and to examine it with a special view to see whether it would warrant such a conclusion; and we are free to confess that we have not been able to perceive the force of the reasoning of that court upon this point. Their statute, though differing somewhat in phraseology, is substantially the same with ours. If the other parts of our statute, to say nothing of the apparent absurdity of the thing, should still leave ground to doubt as to this matter, we consider that the 5th section puts it completely at rest. This is that, “ In all cases where such proceedings are instituted against such boat or vessel by her name or description only, the bond to be given by the plaintiff shall be made payable to ‘The State of Arkansas,’ for the use and benefit of the owners of such boat or vessel, who may institute a suit thereon, if damages be occasioned by the issuing of such attachment wrongfully, and have recovery thereon in the same manner, as if said bond had been given to such person in his propel* name, or in the name and style of the partnership.” If it had been the design of the law to confer upon the boat the capacity to contract directly and without the intervention of some living agent, why did it not require the plaintiff to execute the bond directly to the boat? We are fully satisfied, therefore, that the legislature did not design to confer upon the boat the capacity of contracting, and that consequently the declaration in this case in charging the contract sued upon as having been made by the boat by name, wholly fails to show any cause of action, and, as a necessary consequence, no valid judgment could be rendered upon it. It is apparent that though the contract, when made by either of the persons indicated in the act for the purposes and under the circumstances therein set forth, operates by way of lien upon the boat, yet that the boat in proper person, or to speak more intelligibly, in proper thing, has no power to enter into such contract. The declaration in this case alleges that, in consideration of an indebtedness from the owners of the boat, &c., the boat made and delivered the promissory note. This, we think, is the very reverse of the statement contemplated by the act. The averment, in our opinion, to come within the statute, should charge substantially that, in consideration of an indebtedness against the boat, after setting out the particulars of such indebtedness, the owner, master, supercargo or consignee, promised to pay, &c. It follows, therefore, that, inasmuch as no valid contract is shown by the declaration, for the want of parties competent to contract, no valid judgment could be pronounced upon it, and that consequently it was properly arrested.! But it is urged, that, although it might have been technically and even properly arrested, yet, under our statute, it would ’not necessarily turn the case and the parties out of court, as at common law, but that the plaintiff would still be allowed to amend his pleadings and to proceed to final judgment. To this, we answer that the plaintiffs did not seek to avail themselves of the provisions of the statute; if indeed it could have been done under the state of the pleadings ; but, on the contrary, they virtually waived their right in this respect by asking to be permitted to proceed upon the pleadings as they then stood before the court. This much has been said upon the assumption that the motion of the interpleaders was technically in arrest. But let us suppose, for the sake of argument, that it was simply to set the judgment aside and to permit them to enjoy the benefit of their defence, or indeed, that no motion had been made until the one to strike from the docket. It is clear that the motion to strike from the docket was properly sustained. It most assuredly will not be contended that the court should have done so idle and nugatory an act as to have entertained the case, and to have proceeded to final judgment, when it was perfectly plain, from the record, that no valid judgment could be pronounced in the premises. Let it be supposed that a party should institute his suit against a tree, a stone, or any other inanimate thing, can it be contended that the court would be guilty of so idle an act as to carry it through all the forms of a judicial procedure? We imagine not] but that, on the contrary, the very moment the true state of case came to the knowledge of the court, that instant would it refuse to proceed further, but would strike it from the docket as an unmeaning nullity. The case before us is precisely of that character, under our construction of the statute; and, a& a necessary consequence, the court decided correctly in striking: it from the docket. Another question presented is, whether the court erred in not permitting Merrick & Fenno to interplead. To determine this point correctly, it will become necessary to inquire into the nature of the defence that would be admissible under the statute. The statute provides, after the service of the writ and the filing: of the declaration, that “such attachment shall proceed in like manner in all other respects, and the like judgment and execution shall be had as in other cases of attachment.” The 38th section of the general attachment law declares that “ When the property, credits or effects levied on, by virtue of any writ of attachment, shall be claimed by any person other than the defendant, the court shall permit such claimant to interplead and set up any matter which might be pleadable or set up in defence of the title of such property in an ordinary action at law for such property; and such court, or if either party require a jury, the jury shall immediately (unless cause be shown for a continuance) inquire into and determine the right of property; and if the court or jury shall find for the plaintiff in attachment, he shall recover his costs against the claimant, and if the finding be for the claimant, he shall retain his property and recover his costs against the plaintiff.” The interpleaders in such a case are clearly entitled to the benefit of this section in case its provisions can be made to apply so as to defeat the claim set up in the declaration. If a party, other than the pretended owner, shall have such a title to the property in controversy as to enable him to defeat the claim of the plaintiff, either by showing that no such lien ever existed in point of fact, or that, admitting it did once exist, it has been discharged by matter subsequent, no good reason is perceived why such title may not be shown by way of interplea. This being the case, it follows necessarily that no act of the pretended owner, even though he should come forward and confess judgment, can so operate as to deprive the interpleader of the benefit of his defence. We are satisfied, from a full view of this case, that the circuit court committed no error in striking it from the docket, and that consequently such judgment ought to be affirmed. The judgment of the circuit court of Pulaski county, herein rendered, is therefore in all things affirmed.